JOHN W. STUYVESANT AND ALMIRA B. STUYVESANT v. CALVIN WILCOX AND ROSANNA M. WILCOX.

*Mental competency—Undue influence—Fraud—Cancellation of deed.*

1. It cannot be said that a testator is incompetent to transact business who, on the will being read over to him as dictated by a third party, objects to it as not as he wants it, and directs that it be drafted as finally executed.

2. The decree appealed from, ordering the cancellation of a deed given by the complainants in consideration of a life-support agreed to be furnished by the defendants, and a reconveyance of the land, is modified so as to require the complainants to release the defendants from liability under the mortgage given to secure their agreement for such support, and as modified is affirmed, for reasons stated in the opinion.

Appeal from Van Buren. (Buck, J.) Argued May 13, 1892. Decided June 10, 1892.

Bill to cancel a deed given in consideration of a life-support, etc. Defendants appeal. Decree modified and affirmed. The facts are stated in the opinion.

*E. R. Annable* and *Osborn & Mills,* for complainants.

*L. A. Tabor* and *Boudeman & Adams,* for defendants, contended:

1. A testator who has sufficient mind and memory to understand what he is doing may make a valid will, although at the time of its execution he is incapable of transacting business generally; citing *Kempsey v. McGinniss,* 21 Mich. 123; *Fraser v. Jennison,* 42 Id. 230; *Gibbons v. Dunn,* 46 Id. 146; *Rice v. Rice,* 50 Id. 448; *Hoban v. Piquette,* 52 Id. 361.

2. On the question of undue influence, see *Taylor v. Kelly,* 31 Ala. 59; 1 Wms. Ex'rs, 47; and this case is clearly within that of *Latham v. Udell,* 38 Mich. 238; and see *Wallace v. Harris,* 32 Mich. 393-397; *Pierce v. Pierce,* 38 Id. 413; *Schofield v. Walker,* 58 Id. 96; *Maynard v. Vinton,* 59 Id. 139; *Gardner v. Gardner,* 22 Wend. 526; *Shailer v. Bumstead,* 99 Mass. 121; *In re Jackman's Will,* 26 Wis. 104; *Brownfield v. Brownfield,* 43 Ill. 147; *Roe v. Taylor,* 45 Id. 485; *Rutherford v. Morris,* 77 Id. 413; *Miller v. Miller,* 3 Serg. & R. 269; *Kinne v. Johnson,* 60 Barb. 70.

MORSE, C. J. The bill in this case is filed to set aside a conveyance from the complainants to defendant Calvin Wilcox of 80 acres of land, situated in the township of Decatur, Van Buren county, in this State, on the ground of the mental incompetency of the complainants at the time the deed was executed, and undue influence and fraud on the part of the defendants in obtaining the same. The complainants were granted a decree in accordance with the prayer of the bill in the court below. The deed was ordered to be canceled, and it was decreed that, within 40 days from the entry of the decree in that court, the defendants should reconvey the premises

to complainant John W. Stuyvesant free and clear from all liens and incumbrances that may have been placed thereon by said Calvin Wilcox while the title remained in him, and, in default of such conveyance, the decree of the court below might be recorded, and have the same force and effect as such conveyance would have had. Defendants appeal.

At the time of the execution of this deed, February 4, 1890, John W. Stuyvesant was 78 years of age, and Almira, his wife, was 76. They had lived together about 57 years, and owned this 80 acres of land, worth from $1,500 to $2,500, free from all incumbrances, and had some $400 or $500 worth of personal property. After decree in the court below, and pending the appeal to this Court, John W. Stuyvesant died. At the same date of the deed the defendants executed to complainants a mortgage of $2,000 upon the land, conditioned that they would maintain, support, and care for complainants in a good and comfortable manner, during the terms of their natural lives, with all the necessaries of life, and, in sickness, provide them each with good medical care and attention, to bury them both in a respectable manner at their death, and to erect suitable headstones at their graves. On the same day John W. Stuyvesant made his will devising all his property to his wife during her life, and at her death to his daughter, the defendant Rosanna M. Wilcox, absolutely.

A careful examination of the record reveals a case not uncommon in the courts, and a transaction seldom entered into without trouble, litigation, and family quarrels as a sequel. Besides Mrs. Wilcox the complainants had one son, Azariah Stuyvesant, and two daughters. The old gentleman was not only weakened in mind and body by advanced years, but had not entirely recovered from a severe fit of sickness at the time these papers

were made; and the old lady, with the blind obedience which had characterized her for more than half a century of married life, depended almost entirely upon the will of her husband. It cannot be said that the old gentleman was incompetent to transact -business or to dispose of his property. It is shown that when Wilcox dictated the will to the conveyancer, and it was first drafted, bequeathing the property directly to Mrs. Wilcox, and so read to Stuyvesant, he at once said, "No, that is not as I want it;" and directed that it be drafted as it was finally executed. It is evident, however, that he was susceptible to undue influence. There is a conflict in the evidence as to who first proposed this arrangement, the complainants or the defendants, and it is immaterial. The complainants had rented the farm, and were going to leave it. They claim that Wilcox and his wife coaxed them to come and live with them, and the defendants swear that they were importuned by the old folks to make the arrangement.

But there is one phase of the controversy which clearly shows that the complainants were either deceived into the agreement, or did not fully understand its import. Immediately after the papers were drawn, upon reaching home, Wilcox claimed all the personal property as his own, and would not let the old gentleman have control of any of it. He would not allow him to drive his own horse and wagon, which he brought from the farm, to Paw Paw. As soon as Wilcox claimed the personal property, the complainants were dissatisfied, and wanted defendants to deed back to them, offering to pay for their board and all expenses. Mrs. Wilcox was willing to do this, but Wilcox refused. The complainants both testify that, under the agreement as talked, Wilcox promised to renew a note of $100, which Stuyvesant then held for borrowed money, and give him another note for

$50, and place the additional sum of $50 in bank to the credit of Stuyvesant, so that the complainants might have a little money of their own, and not feel wholly dependent upon defendants. Complainants also claim that Wilcox bought the cows and some other things of them, and promised to pay for them. Stuyvesant also testifies that Wilcox snatched the $100 note from him, and claimed that it was paid by the arrangement. Wilcox denies that he made the agreement as to the notes and the money, and claims that Stuyvesant gave him the $100 note as paid. If the defendants obtained this deed by the promises claimed to have been given as above, and then set up a claim to the personal property, and refused to fulfill the promises, the complainants are entitled to relief.

The defendants claim that there was no trouble betwen them and complainants until Azariah, the eldest son, appeared on the scene, and demanded $450 of Wilcox, which he claimed was due him from his father for money sent home to him while Azariah was in the army, and threatened to make trouble if his demand was not complied with. There is no doubt that Azariah hastened the breach between complainants and defendants, and thereafter took an active and aggressive part in the difficulties growing out of the contest over the personal property; but it is equally clear that the old people were dissatisfied and unhappy over this claim of Wilcox to the personal property before they saw Azariah. It is not shown that defendants were guilty of any ill treatment of complainants other than as related to the personal property, and they were well cared for so far as their wants were concerned, and Mrs. Wilcox appears to have been a good daughter to them; and, if her advice had been followed, there would have been peace and happiness to all by the restoring to the old people of their

property. The disposition of Wilcox does not seem to have been of the very best, and his refusal to let the old people take their bedding after they left the house, and his fight with the old man over a tool of insignificant value,—a carpenter's plane,—does not commend him as one likely at all times to be either good or humane to complainants.

We are satisfied that the complainants were induced to enter into this agreement upon the promise of having the notes and $50 in money to rely upon, so that when they wanted tobacco, which both used, or any other small luxury, they could procure it without going to defendants. We are also satisfied that they did not agree or consent that the personal property should belong to defendants.

The decree of the court below will be affirmed, with the modification that the complainants, or their legal representatives, release the defendants from all obligations and liability upon the mortgage; the complainants to recover costs in this Court.

McGRATH, LONG, and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.